The opinion of the court was delivered by
Gibson, J.
As long as the common law form of ejectment was in use, plaintiffs were often put to unnecessary inconvenience in proving defendants to be in possession of any part of the premises, which, where the land lay in a new settlement or remote from a thickly populated part of the country, was no easy matter. This occasioned many' non-suits and was found to be a great hardship to suitors. Why it was so, considering that the courts bad the whole machinery of the action under their controul, and might modify its operation so as to produce the best practical results, I am at a loss to discover. There would have been no hardship in refusing permission to take defence on the title without at the same time admitting the fact of possession: or if the defendant chose to disclaim title, and to rest on a denial of his being in possession, he should have been compelled to apprize the plaintiff that he relied on that alone. Our act of assembly which gives- the action of ejectment in its present form has remedied the inconvenience by declaring “ the return by the sheriff of having servéd the writ on the defendants, marked served by him,” shall be evidence of such defendants having been in actual possession. The return is however but prima facie evidence, and may be disproved. I cannot concur in the construction of the judge who tried the cause, and who restrained the operation of this clause to defendants who where not originally parties, but who being found in possession were added by the sheriff. It must be admitted however that a strong hypothetical reason in support of his opinion is* that as to persons not named in the writ, but actually found on the premises, it is expressly made the duty of the sheriff to ascertain the fact of their being in possession, whereas with the defendants originally named, he has no further concern than to serve them with process; and the return of an officer acting on oath ought, (it might be thought,) to be of more weight in regard to a matter of which it is his official duty to judge, than in regard to a matter about which he was not bound to inquire: and that the legislature may therefore have intended to distinguish between the two classes of defendants. But the words undoubtedly include both classes ; and as there was a' general mischief which loudly called for this v ery remedy, the construction also ought to be general. This provision has been thus construed in all the districts with which I have any acquaintance, and has in this particular been found to be extremely beneficial. On this exception then the judgment must be reversed.
All the remaining points resolve themselves into a single one. The plaintiff is the: devisee of a certain Christian Voght, who obtained a patent for the land in question in 1774,. hut who by the *153 name of Christian Fonts, was attainted of treason, by the act of the 6th March, 1778, The variance however is immaterial, as he was called out under the 3d section of the act, fay proclamation of the supreme executive council, who had probably discovered the mistake of the name, and the forfeiture of his estate consummated by his default of rendering himself at the day specified: as is fully shown by the minutes of council given in evidence. The land it seems was not discovered by the executive agents, or in any way disposed of by the state, and the only consideration is whether the title of Voght was restored by the 6th article of the treaty of 1783, which declares: “That there shall be no further confiscations made, nor any prosecutions commenced against any person or persons for, or by reason of, the part which he or they have taken in the present war; and that no person shall on that account suffer anyfur* iher loss or damage either in his person, liberty or property: and that those who may be in confinement on such charges, at the time of the ratification of the treaty in America, shall be immediately set at liberty, and the prosecutions so commenced be discontinued.” I cannot see what application this has to the case of Voght, the confiscation of whose estate was complete before the ratification of the treaty which had, in such cases, no retro-active operation. The confiscation did not consist of turning theforfeited property into cash, and placing it in the public fisc or treasury, but in vesting the title in the state, the sale being a measure adapted to her own convenience: nor was this provision of the treaty designed to operate in cases where the forfeited property remained specifically in the possession of the state, but only to secure a general amnesty when proceedings with a view to attainder had not been begun, or having been begun had not been finished. In this part of the charge therefore there is no error.
Judgment reversed and a venire de novo awarded.